**Irene Olson, Appellant, v. Arthur J. Grant, Appellee.**

**Gen. No. 46,386.**

First District, Third Division.
February 2, 1955.
Rehearing denied February 24, 1955.
Released for publication February 25, 1955.

Smietanka & Garrigan, of Chicago, for appellant; Joseph G. Smietanka, and Charles D. Snewind, both of Chicago, of counsel.

Thomas J. Finnegan, of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff's action is for forcible entry and detainer to recover possession of an apartment and garage and for the unpaid rent for the month of October 1953. Defendant filed a counterclaim seeking treble damages under the federal rent control statute, alleging that plaintiff lessor executed a lease for the apartment at a rental of $55 per month and a 3-stall garage at $30 per month, a total of $85 stipulated in the lease. Defendant further alleged that plaintiff rented two of the stalls in the garage at $10 each, so that defendant was compelled to pay $85 for the apartment and one stall; and that this was all done by plaintiff to circumvent the maximum ceiling fixed in the federal regulations of $55 per month for said apartment.

A trial without a jury resulted in a judgment for defendant on his counterclaim for $690, representing treble damages and attorney's fees under the federal statute, and a finding and judgment for defendant on plaintiff's complaint for forcible detainer and rent, from which finding and judgment of the court plaintiff appeals.

Plaintiff's principal complaint is that the record demonstrates she did not have a fair trial, and that the trial judge unduly restricted plaintiff's right to introduce her evidence.

The report of proceedings discloses that a considerable portion of the record is devoted to colloquies between the court and plaintiff's counsel. It is earnestly argued that these colloquies clearly disclose definite prejudice of the court against plaintiff, which deprived her of a fair trial. Before any evidence was offered by plaintiff in defense against the counterclaim, plaintiff's counsel made the following statement:

"Mr. Smietanka: It is clear and unequivocal that there has been no complaints made to the Housing Expediter or anybody else, and this action now belatedly comes up in a set-off of rent. I do not think that

309

the counterclaim states a cause of action and I do not think that the set-off claimed here is pertinent, and I think it should be stricken. The court has not read the pleadings, but has become apparently familiar with the details.

"The Court: I have become familiar in two ways, sir. One is by the information you have given me so eloquently, and also eloquent information from what I have received from what you did not answer, and you would be surprised sometimes, a failure to answer gives me more information than direct answers. Now, look, sir, it is clear to me, it is clear to me that your man, knowing that these premises were under rent control, and knowing that the legal ceiling was a certain amount, sought some way of circumventing the law and enriching himself illegally. That is clear to me, and how did he do it? He gave his tenants leases, wherein he charged them $30.00 a month for one stall in a nine or ten dollar garage, thereby enriching himself at least $20.00 a month in excess of what the law entitled him to. That seems very clear to me, counsel, even though it is unclear to you.

". . .

"The Court: I heard your client say that he could have had two or three increases there, but because he relied on this lease, he did not apply for them and did not obtain them. A fine chaos we would have had in this country if every landlord made his own laws, made his own arrangements, and circumvented the Act of the Congress of the United States and the United States officials appointed to administer it.

". . .

"The Court: Just a minute, sir, you know and I know that that is not right and it is not legal, and he ought not do it that way. He is not above the law and beyond the law, he is no different from any other property owner who lived during the unfortunate war period and the post war period we went through, but he just

310

saw fit to do it his own way not let the Government of the United States, of which he is a good citizen, I am sure, tell him what to do, he is going to make his own laws.

"..."

"The Court: Do you wish to state anything further concerning why you are here, sir?

"..."

"The Court: Mr. Finnegan says at one time it looked as though the matter had been settled on some basis or the other, and I am not trying to be interested in that, but it seems to me, gentlemen, unfortunately, if that is true, that you did not carry out to a conclusion some settlement of this dispute. Whoever is right or whoever is wrong, it has reached a stage where it cannot be profitable. You are going to get bogged down with a lot of time and expenses, your fees and his fees and all that, court costs and reporter's costs and all that.

"..."

"Mr. Smietanka: There are things that are beyond money. This man is being accused of violating the rent control law.

"The Court: It is so obvious to me, counsel, that there isn't any dispute.

"Mr. Smietanka: If Your Honor please, it is not obvious to the plaintiff or to his lawyers.

"The Court: It is to me, sir."

The record further discloses that without any suggestion or request by defendant, or any showing to warrant it, the court called plaintiff as a court's witness, and the following appears:

"Mr. Finnegan [defendant's counsel]: You called her as a court's witness.

"The Court: Yes, so you will not be bound by her testimony, that is the only reason."

During her examination by the court, the following appears:

"The Court: It was an illegal device and whoever advised him to do it, advised him wrongfully, and 'this

311

Court will not put its stamp of approval on it, and I am sure that counsel, as an officer of this Court, will not put his approval on it. . . . They thought they found a scheme to get around the rent control law, to rent a nine dollar or ten dollar stall in a garage for $30.00, giving them a lease, and thereby got $20.00 a month more for the apartment than the law allowed. They are wrong, and this court is going to find them wrong and is going to enter judgment for it. Now, Mr. Smietanka, you are a good lawyer—

"Mr. Smietanka: No, I am not, I cannot sell this Court. If I cannot sell this Court—

"The Court: I don't want to hear that.

"Mr. Smietanka: (Continuing)—on the defense—

"The Court: Do you want to sell me on a bit of chicanery of this kind? You insult me and you insult your own intelligence.

"Mr. Smietanka: This is an improper proceeding that has been going on right along.

"The Court: I know what is improper about it, and you know it. You know what is improper about it. It shocks the conscience of this Court; it is a flagrant—a flagrant, wilful act, with lawyers seeking to defend it. That is what is shocking about it. These people do not know any better, I mean, they do know better, but I mean, after all, they think smart business is anything you can get away with, but for a lawyer to come before this Court and want this Court to put its stamp of approval on it, that is shocking. They are wrong, and they are not going to get possession and they are going to have a judgment entered against them for as much as this Court can find is legal and proper.

"Now, I suggest that you go back in that room with Mr. Finnegan and work out something, if you care to. If not, you have your record, you can tell it to the Appellate Court. I am satisfied.

312

"...

"The Court: Q. Lady, will you tell me any other reason now? Look, Mrs. Olson, can you tell me of any reason why anybody would pay $30.00 a month for a nine dollar stall in a garage if it were not to get around the law? Will you give me one logical reason for that?

"A. Judge, do you mind if I ask something?

"Q. No, you are an evasive person, so is that husband of yours. What I want to know is one logical reason why a person would pay $30.00 to store his car in an alley garage that can be rented up and down the alley for nine or ten dollars, if it is not to evade the law?

"Mr. Smietanka: I will object to that.

"The Court: Oh, don't.

"...

"Q. Would you care to answer, lady, if you are not trying to violate the law and do an illegal thing, how you could ask for $30.00 for a $10.00 garage? Would you just tell me that? I am curious to know your explanation?

"A. Well, I'll tell you Judge, I am not asked, so what I want to say, it is hard for me to try to explain anything.

"The Court: For honest people, it is never hard.

"A. I am honest, Judge, I am an honest person."

The trial judge's feelings may have been aroused by previous experience in other cases, in which he may have concluded that some landlords had circumvented the rent control law. However, he should not have allowed such feelings to generate into prejudicial conclusions in the instant case, before any evidence was heard, when counsel merely tried to outline the nature of the case to the court, as already indicated. We are convinced that in such judicial atmosphere, plaintiff could not and did not receive a fair trial.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

KILEY, P. J. and LEWE, J., concur.